IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL INGRAM, <br><br> Defendant. | No. CR 07-4056-MWB <br><br> ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S MOTION TO SUPPRESS |

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *A.  Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *B.  Objection To Report and Recommendation* . . . . . . . . . . . . . . . . . . . 11

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## I. INTRODUCTION

### A. Procedural Background

In a superseding indictment handed down October 26, 2007, defendant Michael Ingram is charged with conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine, after having previously being convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 851. Defendant Ingram has filed a motion to suppress in which he seeks to suppress evidence seized from his person in the course of a traffic stop, as well as any statements he made prior to the time he was advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant Ingram asserts that the police did not have probable cause to arrest him and therefore all evidence obtained from the police's subsequent search of his person must be suppressed as the fruits of an illegal search. The government filed a timely resistance to defendant Ingram's motion.

Defendant Ingram's motion to suppress was referred to Chief United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b). Judge Zoss conducted an evidentiary hearing and then filed a Report and Recommendation in which he recommends that defendant Ingram's motion to suppress be granted in part and denied in part. Judge Zoss concluded that defendant Ingram's freedom of movement was not restrained to the degree associated with a formal arrest when he was asked one question by a law enforcement officer which was designed to protect the officer's safety during a traffic stop. As such, Judge Zoss found that defendant Ingram was not in custody at the time and his response to the officer's question should not be suppressed. Judge Zoss, however, further found that any statements made by defendant Ingram between the time of his arrest and the time he was advised of his rights should be suppressed. Finally, Judge Zoss concluded that defendant Ingram's challenge to the search warrant should be

2

denied because even without defendant Ingram's pre-arrest statement and the evidence seized from his person, the warrant affidavit contained sufficient evidence for a reasonable magistrate to find probable cause to issue a warrant to search the apartment. Defendant Ingram has filed an objection to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Ingram's motion to suppress.

### *B. Factual Background*

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> For at least several months prior to August 2007, TFO Brad Downing had been compiling information received from various sources about possible drug trafficking at a particular apartment in South Sioux City, Nebraska. Among other things, he had done surveillance of the apartment during which he observed short-term, come-and-go traffic consistent with drug trafficking. *See* Gov't Ex. 2, p. 5, and TFO Downing's hearing testimony.
>
> On August 7, 2007, at about 5:00 p.m., TFO Downing had just arrived home when he received a phone call from a confidential informant ("CI"). The CI had provided reliable information to TFO Downing and other Task Force officers in the past, and the CI previously had given TFO Downing information regarding drug activities at the apartment in question. On this occasion, the CI stated he/she was present at the apartment with some other individuals, and a large quantity of crack cocaine was present in the apartment. The CI stated there were at least three adult black males at the apartment.
>
> TFO Downing contacted TFO Shawn Jensen and asked him to prepare a search warrant for the apartment. TFO

3

Downing next contacted TFO Carl Ragar and TFO Terry Kenny. He gave the officers a brief overview of the investigation, and stated he had information that individuals were distributing crack cocaine from the apartment. He asked officers Ragar and Kenny to initiate surveillance of the apartment pending issuance of a search warrant. TFO Kenny contacted Nebraska State Trooper Dail Fellin and asked him to be present in the general area of the apartment complex in case his assistance was needed. The Task Force officers were in plain clothes in an unmarked vehicle, while Trooper Fellin was in uniform and driving a marked unit with emergency lights. Officers Kenny and Ragar proceeded to the apartment complex and began their surveillance of the apartment in question, keeping track of individuals entering and leaving the apartment. They knew that at least three adult black males were supposed to be present in the apartment, but they did not know the identities of any of the individuals nor did they know which individuals were specific targets of the investigation. In addition, TFO Downing had informed them that one of the individuals in the apartment had been observed in possession of a firearm.

Officers Kenny and Ragar saw two adult black males and a small child exit the apartment and get into a vehicle. When the vehicle drove away, the officers followed and observed a burned-out tail light. They contacted Trooper Fellin and asked him to initiate a traffic stop of the vehicle for the tail light violation. Trooper Fellin was close to the location and accomplished the traffic stop within a few minutes. Officers Kenny and Ragar parked their vehicle behind Trooper Fellin's vehicle. Trooper Fellin approached the driver's side of the vehicle and asked the driver to exit and step to the rear of the vehicle. At the same time, TFO Kenny approached the passenger's side of the vehicle and asked the passenger, later identified as the defendant Michael Ingram, to exit and step to the front of the vehicle. TFO Kenny was wearing a thigh holster for his firearm, and as he walked

4

toward the vehicle and talked with the Ingram, he appears to have his hand resting on his firearm. *See* Gov't Ex. 1. The court finds TFO Kenny did not draw his weapon during the traffic stop.

After Ingram moved to the front of the vehicle, TFO Kenny asked him to place his hands on the hood of the vehicle. He then asked Ingram if he was in possession of anything that would get him into trouble. TFO Kenny testified he asks that type of question on a routine basis for purposes of officer safety. In this case, he had Ingram place his hands on the hood of the vehicle and he asked the question because of the report that someone in the apartment might be in possession of a firearm. Ingram responded that he had some marijuana in his pants pocket. TFO Kenny placed Ingram under arrest for possession of marijuana, patted him down incident to the arrest, and located some marijuana and crack cocaine in his right front pants pocket.

Ingram was transported to the Law Enforcement Center in South Sioux City, Nebraska, where he was placed in an interview room. Task Force officers advised Ingram of his *Miranda* rights, and then interviewed him for about half an hour. At the beginning of the interview, prior to advising Ingram of his rights, the officers explained to Ingram how the federal system works and how he might benefit from cooperating with the officers. Ingram made one statement about his personal use of drugs, and the officers immediately stopped him, telling him that before he said anything else, they wanted to advise him of his rights. *See* Gov't Ex. 3.

Based on information provided by the CI, and on Ingram's possession of controlled substances, a Dakota County, Nebraska, search warrant was issued for a search of Ingram's residence. During the search, officers located drugs, items consistent with drug distribution, and several thousand dollars in U.S. currency. *See* Gov't Ex. 2, p. 1. Several

5

> hours after Ingram's first interview, officers returned to the
> interview room and found Ingram asleep on the floor. They
> awakened him, told him what they had found during the search
> of his residence, and interviewed him for about ten minutes.
> The officers did not advise Ingram of his rights again during
> this second interview. *See* Gov't Ex. 3.

Report and Recommendation at pp. 2-4. Upon review of the record, the court adopts all of Judge Zoss's factual findings.

## II. LEGAL ANALYSIS

### A. Standard Of Review

The court reviews the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of
> those portions of the report or specified proposed findings or
> recommendations to which objection is made. A judge of the
> court may accept, reject, or modify, in whole or in part, the
> findings or recommendations made by the magistrate judge.
> The judge may also receive further evidence or recommit the
> matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III
> judge of any issue need only ask. Moreover, while the statute
> does not require the judge to review an issue *de novo* if no
> objections are filed, it does not preclude further review by the

6

> district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time. *Id*. If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while de novo review generally entails review of an entire matter, in the context of § 636 a district court's *required* de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit

7

Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit has been willing to "liberally construe[]" otherwise general pro se objections to require a de novo review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to this court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, this court will strive to provide de novo review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give de novo review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the

8

advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed). The court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy

9

itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.[1]

---

[1] The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report
(continued…)

10

As noted above, defendant Ingram has filed an objection to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Ingram's motion to suppress.

### *B. Objection To Report and Recommendation*

Defendant Ingram objects to Judge Zoss's Report and Recommendation, asserting that TFO Kenny's assertion that he removed defendant Ingram from the vehicle for the officers' safety is not credible, and that TFO Kenny was not permitted under *Terry v. Ohio*, 392 U.S. 1 (1968), to "immediately place an individual prone on the hood of a vehicle." Thus, defendant Ingram argues that his search and seizure were unjustified and that all evidence obtained during and as a result of his encounter with TFO Kenny should be suppressed.

Defendant Ingram does not challenge that the traffic stop of the vehicle in which he was riding was itself unlawful, nor could he, since the officers could stop the vehicle for the traffic violation, even if the stop was pretextual. *See United States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007) ("'[I]t is well established that a traffic violation-however

---

[1](…continued)
and recommendation will *not* result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g.*, *United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions de novo." (citation omitted)).

11

minor-creates probable cause to stop the driver of a vehicle.'") (quoting *United States v. Barry*, 98 F.3d 373, 376 (8th Cir. 1996) (quoting in turn *United States v. Barahona*, 990 F.2d 412, 416 (8th Cir. 1993)) (internal quotation marks omitted)); *United States v. Ramos-Caraballo*, 375 F.3d 797, 801 (8th Cir. 2004) ("'It is well established that a traffic violation-however minor-creates probable cause to stop the driver of a vehicle.'") (quoting *United States v. Hamby*, 59 F.3d 99, 101 (8th Cir.1995) (internal quotation marks omitted)); *United States v. Gregory*, 302 F.3d 805, 809 (8th cir. 2002) ( holding that "'a traffic violation-however minor-creates probable cause to stop the driver of a vehicle.'") (quoting *Barahona*, 990 F.2d at 416); *United States v. Perez*, 200 F.3d 576, 579 (8th Cir. 2000) (holding that any traffic violation creates probable cause justifying stop of vehicle); *United States v. Lyton*, 161 F.3d 1168, 1170 (8th Cir. 1998) ("Any traffic violation, even a minor one, gives an officer probable cause to stop the violator."). Thus, in the present case, Trooper Fellin had probable cause to stop the automobile in which defendant Ingram was riding for having a burned-out tail light, in violation of Nebraska law.

A reasonable investigation of a justifiable traffic stop may include checking the driver's license and registration, asking the driver to step out of the vehicle, and requesting the driver's destination and purpose. *United States v. Gomez Serena*, 368 F.3d 1037, 1040 (8th Cir. 2004); *United States v. Long*, 320 F.3d 795, 799 (8th Cir. 2003); *United States v. Gregory*, 302 F.3d 805, 809 (8th Cir. 2002); *United States v. Ramos*, 42 F.3d 1160, 1163 (8th Cir.1994). A law enforcement officer may undertake similar questioning of the vehicle's occupants to verify the information provided by the driver. *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002); *United States v. Foley*, 206 F.3d 802, 805 (8th Cir. 2000). Moreover, the United States Supreme Court has decided the question of whether a police officer may order a passenger in a vehicle to exit the vehicle during a lawful traffic stop. *Maryland v. Wilson*, 519 U.S. 408, 410 (1997). Applying

12

Amendment precedent, the Supreme Court balanced the "'public interest'" in law enforcement officer safety with the right of passengers to be "'free from arbitrary interference by law officers.'" *Id*. at 411 (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (per curiam)). On the public interest side of the balance, the Supreme Court deemed law enforcement officer safety a "weighty interest." *Id*. at 413. The Court cited statistics of assaults and killings of police officers during traffic pursuits and stops, and it noted that when there is more than one occupant in a vehicle, "the possible sources of harm to the officer" are increased. *Id*. Against this interest, the Court balanced the personal liberty interest of passengers, concluding that although passengers might have a stronger liberty interest than drivers, "as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle." *Id*. at 413-14. "The only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car." *Id*. at 414. Thus, according to the Court, this intrusion on passengers is "minimal" and that "as a matter of course," a law enforcement officer may order passengers of a lawfully stopped car "to get out of the car pending completion of the stop." *Id*. at 415. In view of the Supreme Court's ruling in *Wilson*, the court has no hesitancy in holding that TFO Kenny lawfully ordered defendant Ingram out of the car. This conclusion leaves for review whether TFO Kenny lawfully asked defendant Ingram if he was in possession of anything which could get him into trouble.

The Supreme Court has repeatedly recognized that traffic stops are dangerous encounters that result in assaults and murders of police officers. *See, e.g.,* Wilson, 519 U.S. at 411-12; *Michigan v. Long*, 463 U.S. 1032, 1047 (1983); *United States v. Robinson*, 414 U.S. 218, 234 n. 5 (1973). In *Wilson*, the Court further observed that the risk of danger to a police officer conducting a traffic stop is "likely to be greater when

13

there are passengers in addition to the driver in the stopped car." *Wilson*, 519 U.S. at 414. In *Terry v. Ohio*, 392 U.S. 1, 27 (1968), the Supreme Court held that a police officer may conduct a reasonable search for weapons for his own protection "where he has reason to believe that he is dealing with an armed and dangerous individual." The Court stated that a pat-down for weapons can occur only where the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. In order to minimize the dangers faced by police officers conducting traffic stops, the Court has extended the constitutional principles in *Terry* to situations involving officers and motorists. *See, e.g., Long*, 463 U.S. 1035-36. Utilizing the standards set forth by the Supreme Court in cases such as *Terry* and *Long*, the Eighth Circuit Court of Appeals has held that "the validity of a *Terry* search does not depend upon the searching officer actually fearing the suspect is dangerous; rather, such a search is valid if a hypothetical officer in the same circumstances could reasonably believe the suspect is dangerous." *United States v. Rowland*, 341 F.3d 774, 783 (8th cir. 2003); *see United States v. Roggeman*, 279 F.3d 573, 581 (8th Cir. 2002). Here, at the time Trooper Fellin stopped the vehicle in which defendant Ingram was riding, TFO Kenny knew that he was conducting an investigation of illegal drug trafficking. Court's have previously noted that, "[g]uns are a ubiquitous part of the drug trade, facilitating transactions by providing protection to dealers, drugs and money." *United States v. Coslet*, 987 F.2d 1493, 1495 (10th Cir. 1993); *see United States v. Young-Bey*, 893 F.2d 178, 181 (8th Cir. 1990) ("The presence and availability of firearms are often crucial to the 'sources' of the drug enterprise."); *see also United States v. Mobley*, 40 F.3d 688, 697 (4th Cir. 1994) ("This Court and other courts have long recognized that drug dealers use firearms to protect their narcotics and the large amount of cash in their possession ."). Moreover, in this case, TFO Kenny had been advised by

14

another law enforcement officer that someone in the apartment, from which TFO Kenny had just seen Ingram and the vehicle's driver exit, had been observed with a firearm. Under the circumstances of this case, the court has no difficulty concluding that TFO Kenny did not violate defendant Ingram's Fourth Amendment rights by removing him from the automobile, having him place his hands on its hood and inquiring whether defendant Ingram was in possession of anything that would get him into trouble. In response to this legal inquiry, defendant Ingram admitted to TFO Kenny that he was in possession of illegal narcotics. At that juncture, TFO Kenny lawfully arrested defendant Ingram for possession of those narcotics and searched him incident to that arrest. The court, therefore, overrules this objection to Judge Zoss's Report and Recommendation.

### III. CONCLUSION

Therefore, for the reasons set forth above, the court, upon a *de novo* review of the record, accepts Judge Zoss's Report and Recommendation and **grants in part and denies in part** defendant Ingram's motion to suppress.

**IT IS SO ORDERED.**

**DATED** this 25th day of February, 2008.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA