**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

MICHAEL INGRAM,

        Defendant.

No. CR 07-4056-2-MWB

**MEMORANDUM OPINION AND**
**ORDER REGARDING SENTENCING**

---

**TABLE OF CONTENTS**

*I.* *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *A.* *Pretrial Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *B.* *Trial And Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *C.* *Post-Trial Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   *D.* *The Prosecution's Appeal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   *E.* *Proceedings On Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*II.* *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
   *A.* *The Prosecution's Second Bite At The Apple* . . . . . . . . . . . . . . . . . . 16
      *1.* *Sua sponte raising the issues* . . . . . . . . . . . . . . . . . . . . . 17
      *2.* *Lack of authority* . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
      *3.* *Unsupported conclusions* . . . . . . . . . . . . . . . . . . . . . . 31
   *B.* *The Prosecution's Present Proof Of A Prior Conviction* . . . . . . . . . . 39
      *1.* *Preliminary evidentiary questions* . . . . . . . . . . . . . . . . . . 39
        *a.* *Arguments of the parties* . . . . . . . . . . . . . . . . . . 40
        *b.* *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . 42
      *2.* *Proof of the prior conviction* . . . . . . . . . . . . . . . . . . . . 48

*III.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

Defendant Michael Ingram was back before the court on May 8, 2009, for completion of a sentencing hearing on a charge of conspiring to distribute crack cocaine after a prior felony drug conviction in violation of 21 U.S.C. §§ 846 and 851. Although this court held that the prosecution had failed, in its first attempt, to establish a prior felony drug conviction, on the prosecution's appeal, in a *per curiam* decision, the United States Court of Appeals for the Eighth Circuit vacated and remanded, on grounds never raised by the prosecution in its appeal, to give the prosecution another chance to prove Ingram's alleged prior conviction. *See United States v. Ingram*, 309 Fed.Appx. 66, 2009 WL 223103 (8th Cir. Feb. 2, 2009) (*per curiam*) (unpublished op.). This written ruling is entered not only to explain whether or not the prosecution has now proved defendant Ingram's alleged prior felony drug conviction, but also to register respectful disagreement with giving the prosecution a "second bite at the apple" to try to do so.

The prosecution has now cured deficiencies in its proof of Ingram's prior felony conviction. However, giving the prosecution a second bite at the apple, on grounds that the prosecution never raised in its appellate briefs, eviscerates several long-standing, bedrock principles of appellate review, including the doctrines of "plain error" and "party presentation"; creates out of thin air a "bailout" not requested by the prosecution;[1] is unsupported by any precedent in this Circuit or anywhere else; is unsupported by any conceivable analogue in criminal law (or civil law, for that matter); is inconsistent with the plain language of 21 U.S.C. § 851, and thus contravenes the intent of Congress; and is inconsistent with the record and the facts in this case, ignored or overlooked in the *per*

---

[1]At least under the recent TARP (Troubled Asset Relief Program), the recipients of the government's massive "bailout" had to request it.

*curiam* opinion, concerning when the prosecution not only should have known but actually knew that Ingram's prior conviction was in dispute. For each of these reasons, and in the context of a recent string of eleven reversals of the Eighth Circuit Court of Appeals by the United States Supreme Court on sentencing issues on which the Eighth Circuit Court of Appeals had erroneously tilted in favor of the prosecution, the appellate court's *sua sponte* review and remand in this case are deeply troubling.

## I. INTRODUCTION

### A. Pretrial Proceedings

In an October 26, 2007, Superseding Indictment, defendant Michael Ingram was charged with conspiring with three co-defendants and others, from between about 2006 through August 6, 2007, to distribute and to possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine which contained cocaine base, commonly called "crack cocaine," in Ingram's case, after he had been convicted of a felony drug offense, that is, manufacture/delivery of a controlled substance, on or about October 24, 2001, in Cook County, Illinois, case number 01CR219510, all in violation of 21 U.S.C. §§ 846 and 851. Defendant Ingram's three co-defendants all eventually entered guilty pleas to the conspiracy charge, but Ingram proceeded to trial.

On February 4, 2008, prior to Ingram's trial, the prosecution filed a Notice Of Intent To Seek Enhanced Penalties Pursuant To 21 U.S.C. § 851 (§ 851 Notice), notifying the defendant and the court that the prosecution intended to rely on a previous conviction for enhanced punishment, identifying that prior conviction as one for "[m]anufacture/delivery of [a] controlled substance, in Circuit Court of Cook County, Illinois, on or about October 24, 2001, in case number 01CR2195101." The § 851 Notice did not cite any applicable statute as defining the offense for which Ingram had been

convicted. There is apparently no dispute that this § 851 Notice was an "information" stating the defendant's prior conviction to be relied upon within the meaning of 21 U.S.C. § 851(a). The prosecution did not append to its § 851 Notice any evidence or other documentation to prove the prior conviction, nor is the prosecution required to do so by 21 U.S.C. § 851. *See* 21 U.S.C. § 851(c)(1) (stating, in pertinent part, "The failure of the United States attorney to include in the information the complete criminal record of the person or any facts in addition to the convictions to be relied upon shall not constitute grounds for invalidating the notice given in the information required by subsection (a)(1) of this section."). Nevertheless, the prosecution's own § 851 Notice put the prosecution on notice, from at least February 4, 2008, that the prosecution might be required to prove Ingram's prior felony drug conviction to obtain enhanced penalties pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851.

Prior to trial, by Order dated February 28, 2008, the court granted the prosecution's February 25, 2008, Motion For Preliminary Determination Of Admissibility Of Certain Evidence, as supplemented on February 27, 2008, which pertained to admissibility of evidence of Ingram's 2001 conviction for "manufacture/delivery of a controlled substance," and denied defendant Ingram's cross-motion in limine concerning the same evidence in his February 28, 2008, Resistance To Government Motion For Preliminary Determination Of Admissibility Of 404(b) Evidence. Ingram had argued that the evidence of his prior conviction should be excluded, because there was no evidence that the prior conviction, some five years before the conduct alleged in this case, had any temporal relevancy to the charged offense; that the prior conviction did not show motive or intent to join a conspiracy to distribute controlled substances and, as such, was not probative of any element of the charged offense; that the evidence would be introduced solely to prove his propensity to engage in criminal misconduct; and that the admission of such evidence

would result in undue prejudice under Rule 403, because the jury would be unable to view the prior conviction as anything other than propensity evidence. Ingram did not argue, however, that the evidence in question did not prove that he had committed the prior offense. The court preliminarily determined that evidence of Ingram's 2001 conviction was admissible, because, *inter alia*, if evidence of the prior conviction included charging documents and police reports, such evidence would likely be sufficient to establish the prior conviction for Rule 404(b) purposes. The court did not rule that the prosecution had proved the prior conviction or had proved that any such prior conviction was a felony drug conviction.

## B. Trial And Conviction

During Ingram's trial, which began on March 3, 2008, the prosecution sought to offer a certified statement of conviction from the State of Illinois to establish defendant Ingram's prior narcotics conviction, but Ingram called the sufficiency of that certified statement into question. Specifically, from the face of the document, it was unclear precisely what illegal drug formed the basis for the conviction and whether that conviction was a felony or a misdemeanor. Real Time Trial Transcript for March 4, 2008, at 156-57. As a result, the prosecution withdrew its request to introduce evidence of defendant Ingram's Illinois conviction. *Id.* at 159. Thus, not later than March 4, 2008, the prosecution was on notice that there were problems with its proof of Ingram's prior felony drug conviction and, more specifically still, the prosecution was on notice that Ingram challenged the sufficiency of the prosecution's proof of such a prior conviction and whether it was for a misdemeanor or a felony.

The jury found defendant Ingram guilty of the charged conspiracy offense on March 5, 2008. However, the jury was not required to determine whether or not Ingram had

5

previously been convicted of any felony drug offense under 21 U.S.C. § 851 to render its verdict, because the *Apprendi* line of cases does not require jury determination of a prior conviction. Thus, the jury verdict did not address the adequacy of the prosecution's proof of the 2001 conviction.

### C. Post-Trial Proceedings

By Order dated June 5, 2008, Ingram's post-trial motions were denied, so he came on for sentencing on June 16, 2008. Prior to sentencing, the probation officer assigned to the case provided the parties with a draft Presentence Investigation Report (PSIR), which, in pertinent part, scored Ingram's sentence on the basis of a prior felony drug conviction pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851. Thus, the probation officer computed Ingram's guideline range to be 168 to 210 months, but noted that the mandatory minimum sentence, with the § 851 enhancement, was 240 months. *See* 21 U.S.C. § 841(b)(1)(A). Ingram did not object to the PSIR within fourteen calendar days after the PSIR's disclosure, as required by a local administrative order, which requires counsel to communicate to the probation officer within that time frame "any objections counsel may have to any material facts, information, sentencing classifications, sentencing guideline ranges, and policy statements contained in or omitted from the PSIR." Northern District of Iowa Administrative Order No. 1241, ¶ 5(a) (superseded on October 31, 2008, by Public Administrative Order No. 08-AO-13-P). Nor did he file any Sentencing Memorandum at least five court days prior to the sentencing hearing as required by N.D. Iᴀ. L.Cʀ.R. 32.a.2. *See also* Northern District of Iowa Administrative Order 05-AO-0002-P (motions and briefs on variances and departures "shall be filed at least seven days prior to the scheduled sentencing").

On June 13, 2008, the Friday before Ingram's Monday sentencing hearing, Ingram's counsel filed a Response To 21 U.S.C. § 851 Filing (§ 851 Response), pursuant to 21 U.S.C. § 851(c), denying the allegations of the prosecution's February 4, 2008, § 851 Notice, denying that Ingram had previously been convicted as alleged in the § 851 Notice, and asserting that Ingram should be excepted from increased punishment according to the provisions of the statute. Just prior to the sentencing hearing on June 16, 2008, the prosecution filed its Sentencing Memorandum, noting that, "[o]ne business day prior to sentencing, defendant contests his prior felony drug conviction and puts the government to its proof pursuant to 21 U.S.C. § 851(c)," even though Ingram had not previously alleged that his prior conviction was in violation of the United States Constitution nor had he objected to the fact of his conviction or the underlying facts as stated in the PSIR. Although the prosecution asserted in its Sentencing Memorandum that it would be able to establish the prior conviction and that the prior conviction was a felony, and moved the court to find that Ingram is subject to the sentencing enhancement, the prosecution also prayed, in the alternative, that the court "continue the sentencing to allow sufficient time for the government to present and the court to consider evidence of defendant's previous felony drug conviction." Plaintiff's Sentencing Memorandum at 3.

At the sentencing hearing on June 16, 2008, the prosecutor reiterated his request for a continuance owing to the defendant's late § 851 Response, so that the prosecutor could obtain additional records or certification of those additional records to satisfy the court as to the authenticity and reliability of those records. Ingram objected to such a continuance. After fairly lengthy argument from both sides on the issue, the court concluded that the local rules could not trump the statutory scheme for objections to a § 851 notice or information, that Ingram's § 851 Response was timely under the statutory scheme, and that, in any event, the prosecution should be prepared to prove the prior

conviction at the time of sentencing. Therefore, the prosecution's request for a continuance was overruled, but the parties were informed that the prosecution would be allowed to appeal immediately, before completion of the sentencing, pursuant to 21 U.S.C. § 851(d)(2), if the court ruled for the defendant on the enhancement issue.

After hearing the prosecution's evidence, the court found that the prosecution had failed to prove, beyond a reasonable doubt, or by clear and convincing evidence, or even by a preponderance of the evidence, that Ingram had been convicted of a felony drug offense in 2001, because of inconsistent identification of the statute under which he was purportedly charged in the documents offered by the prosecution to support the prior conviction. Specifically, some of the documents offered by the prosecution identified the offense as a violation of 720 ILCS 570/401(D), and one even identified the statute violated as 720 ILCS 570/402-C, when the prosecution asserted that the statute Ingram had violated was actually 720 ILCS 570/401(d), and the prosecution had been unable to prove that 720 ILCS 570/401(D) even existed or defined a felony offense. Therefore, the court found that "the government's woefully failed in its burden of proof and there is no 851 enhancement." Transcript, June 16, 2008, Sentencing Hearing, 66:22-67:17. The parties agreed that 21 U.S.C. § 851 provides for immediate appeal of that determination, so the remainder of Ingram's sentencing hearing was postponed until the prosecution had the opportunity to take such an appeal.

### D. The Prosecution's Appeal

The prosecution did, indeed, appeal the denial of a prior conviction enhancement pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851 in Ingram's case. The prosecution's opening and reply briefs on appeal reveal that the prosecution did not identify any issue on appeal as pertaining to the denial of its request for a continuance of the sentencing

hearing based on the supposed tardiness of Ingram's § 851 Response, or even assert the untimeliness of Ingram's § 851 Response under the statute or any local administrative order or local rule, nor did the prosecution pray for any relief from the appellate court on any such ground. The prosecution did no more than note in its briefing that Ingram had not objected to the prosecution's § 851 Notice until the eve of sentencing. The *only* error asserted by the prosecution was the finding that the prosecution's proof of a prior felony drug conviction was inadequate on the basis of inconsistent capitalization of one letter in the offense citation, and the only relief sought by the prosecution was reversal of the finding that the prosecution had failed to establish the prior felony drug conviction and remand of the case for sentencing using the enhanced penalty. *See* Brief of Appellant and Reply Brief of Appellant, *United States v. Ingram*, No. 08-2563 (8th Cir. Sept. 9 and Oct. 17, 2008, respectively). In its written ruling, the appellate court also summarized the prosecution's argument as "the district court erred in finding that Ingram did not have a previous drug conviction in Illinois." *Ingram*, 309 Fed.Appx. at 67, 2009 WL 223103 at *2. Thus, the issue on appeal, as framed by the prosecution and acknowledged by the appellate court, was whether the prosecution had proved Ingram's prior felony drug conviction, not whether the prosecution had been surprised by Ingram's eleventh hour denial of the prior conviction or improperly denied a continuance to attempt to marshal evidence to prove such a prior conviction.

Notwithstanding the prosecution's framing of the issue on appeal, the appellate court *sua sponte* injected the issue of defendant Ingram's supposedly untimely § 851 Response and the denial of a continuance into the prosecution's appeal. The prosecution represented in post-remand proceedings before this court, and a review of a recording of the oral arguments at the appellate court reveals, that during oral arguments, one of the judges on the panel asked whether the first that the prosecutor knew that Ingram was challenging his

prior conviction was on the eve of the sentencing hearing and whether the prosecutor would have had more evidence of Ingram's prior felony drug conviction, if the prosecutor had been given earlier notice that Ingram was challenging his prior conviction. The prosecutor responded that Ingram's § 851 Response was the first he knew that Ingram was challenging his prior felony conviction[2] and that the prosecutor would have been able to present more evidence that "big D" in Illinois court records meant "small d" in the Illinois statute, so that records of Ingram's prior conviction identified a prior felony drug conviction. Another judge on the panel then asked what evidence the prosecutor would have presented about "big Ds" and "small ds." The prosecutor responded that people familiar with the way the records were created in Cook County, Illinois, would have been able to explain that "big D" in certain records meant "small d" in the pertinent statute. Oral Arguments, *United States v. Ingram*, No. 08-2563 (8th Cir. Dec. 9, 2008). Thus, the appellate court, not the prosecutor, raised the questions of whether Ingram's § 851 Response was tardy and whether the prosecution's request for a continuance was properly denied.[3]

---

[2]This representation is contrary to the record, which shows that, not later than March 4, 2008, when Ingram challenged the exhibits that the prosecution offered at trial to prove his prior conviction for Rule 404(b) purposes, and the prosecution withdrew that evidence, the prosecution was on notice that there were problems with its proof of Ingram's prior felony drug conviction and, more specifically still, the prosecution was on notice that Ingram challenged the sufficiency of the prosecution's proof of whether such a prior conviction was for a misdemeanor or a felony.

[3]The surprise and shock at reading the appellate court's opinion in this case caused the court to deviate from its usual practice of never listening to oral arguments or reading the appellate briefs on cases from this court. Indeed, this court deletes the e-mail sent by the clerk of the circuit court every Monday indicating cases on appeal from this court, based on the subject heading, without opening it. Deleting this e-mail is consistent with

(continued...)

Moreover, notwithstanding the prosecution's framing of the issue on appeal and the appellate court's acknowledgment of that issue, the appellate court ruled as follows:

> On this record, we do not determine whether 720-570/401(D) of the Illinois Code means 720-570/401(d). In light of the *special circumstances* existing in the presentation of the evidence regarding sentencing in this case, we believe that the government should have the opportunity to establish that the "D" in the transmission of the code section from the Illinois court records refers to the section of the statute containing the small "d." *Cf. People v. Moore,* 365 Ill. App. 3d 53, 301 Ill. Dec. 819, 847 N.E.2d 829, 841 (Ill. App. 2006). We therefore vacate the district court's order and remand for such a determination and for other action as may be appropriate in light of any new evidence relating to an alleged prior felony drug conviction of Ingram in the Illinois courts.

*Ingram*, 309 Fed.Appx. at 67-68, 2009 WL 223103 at *2 (footnote omitted) (emphasis added). The appellate court explained, in a footnote after "special circumstances" in the quotation above, that "[t]he element of surprise disadvantaged the government when Ingram, on the last business day before sentencing, denied that he had a drug conviction in Illinois, despite having sufficient notice of the government's intention to seek a penalty-enhancement based on this conviction." *Id.* at 68 n.1, 2009 WL 223103 at *2 n.1. Thus, the appellate court not only decided the appeal on issues never raised by the prosecution in its appeal, but fashioned relief never requested by the prosecution on appeal.

---

[3](...continued)
this court's long held practice of never checking to see if a party appeals one of its rulings.

## E.  Proceedings On Remand

In response to the mandate of the Eighth Circuit Court of Appeals remanding the case for further proceedings, the court held a hearing to complete Ingram's sentencing on March 24, 2009.  At the sentencing hearing, the prosecution relied on the same seven exhibits to establish Ingram's prior conviction that it had offered at the June 16, 2008, sentencing hearing, one of which was the same certified statement of conviction from the State of Illinois that the prosecution had offered, then withdrawn, at trial.  In addition, the prosecution presented testimony, by telephone, from Richard Casey, the office manager for the Clerk of the Circuit Court, Criminal Division, for Cook County, Illinois.

As to pertinent matters, Mr. Casey testified from his knowledge and experience that certified copies of documents of the Circuit Court of Cook County, Illinois, may be certified by a deputy clerk affixing the name of the clerk of court and the deputy's initials. Realtime Unedited Transcript, March 24, 2009, Sentencing Hearing, (March 24, 2009, Realtime Sentencing Transcript) 11:4-12:6.  Mr. Casey testified that he did not know if any statute provided the authority for this procedure, but that "[t]here is a circuit court rules [sic] of court that allows us to do that." *Id.* at 13:9-13:21.  When questioned further about what rule, he stated, "I would—I would—I would say that it's an ILCS rule of court set out by the office—the administrative office of the Illinois courts," but that he did not know where the administrative office got its authority for such a procedure. *Id.* at 13:22-14:8.  The court does not find this testimony sufficient to establish the authority of the clerk of court to delegate to a deputy the authority to sign the clerk of court's name on certified court records.  Nor does the court find the series of Illinois statutes cited by the prosecution in a post-hearing brief, indicating that the clerk of court has the general authority to appoint deputies and that the principal clerk is responsible for the acts of his or her deputies, *see* Prosecution's April 7, 2009, Sentencing Memorandum at 2-3, to be

12

sufficient to establish the authority of the clerk of court to delegate to a deputy the authority to sign the clerk of court's name on certified court records. Moreover, Mr. Casey testified that he did not recognize the initials of the person who had signed the clerk of court's name to the Certified Statement Of Conviction/Disposition for Michael Ingram's conviction on October 24, 2001, in Case No. 01CR2195101, Prosecution's Exhibit 1, that he had not signed the clerk of court's name, and that he did not know who had. *Id.* at 12:13-13:8. Thus, the court cannot find on this record that the Certified Statement is, in fact, properly certified.

As to what the Certified Statement Of Conviction/Disposition for Michael Ingram showed, Mr. Casey testified that, on page one of Exhibit 1 (stapled as the second page of the exhibit), the capital "F" between the identification of the statute in the charge and the description of the charge as "OTHER AMT NARCOTIC SCHED I&II" "indicates that the case type is a felony." *Id.* at 15:25-18:2. He explained that all of the letters on that line, including any letters in the identification of the statute in the charge, were capitalized, because the computer system for court records in the clerk of court's office for the Circuit Court of Cook County, Illinois, was developed in the early 1970s, "and it was designed to default to capital letters." *Id.* at 18:9-19 (taking this testimony subject to the defendant's objection that the question asked called for speculation). He explained, further, that clerical staff could not enter, for example, "small d," in the charging statute field, because the system was "code driven," in that, the staff member responsible for initializing a case "would insert the code for the statute," and "the system is developed to convert everything into upper case letters." *Id.* at 29:13-21. When the court asked him how one would be able to tell the difference between statutes with both capital and small letters, he answered, not altogether responsively, "Everything is coded as capital." *Id.* at 30:15-22. He also testified that the "CR" in the case number, 01CR2195101, "indicates

that the Cook County state's attorney's office filed a felony case with us." *Id.* at 18:25-19:1. Mr. Casey also testified that the records indicated that Ingram had pleaded guilty to the charged offense and that there was nothing in the entry to indicate that the case was pleaded from felony status to misdemeanor status. *Id.* at 22:13-17. He testified that, in his opinion, Exhibit 1, together with Exhibit 5, which is an uncertified copy of a sentencing order, documented a felony conviction for defendant Ingram. *Id.* at 23:22-24:3.

The other exhibits offered by the prosecution, which were from Illinois court records or other sources, were not certified. Nevertheless, for the sake of completeness, and because their admissibility is at issue, the court will identify them here. Exhibit 2, which purports to be a Complaint For Preliminary Examination, describes the offense that Ingram allegedly committed on June 7, 2001, as "unlawful possession of a contr. subst. w/intent to deliver," but nowhere cites any statutory provision allegedly violated or indicates whether the offense in question was a misdemeanor or a felony. Exhibit 3, which purports to be the Information filed by the Illinois State's Attorney of Cook County, identifies the statute that Ingram allegedly violated on June 7, 2001, leading to his conviction on October 24, 2001, as "CHAPTER 720 ACT 570 SECTION 401(D)," but Mr. Casey did not profess to know why the State's Attorney's system, which he agreed was separate from the clerk of court's system, also used a "capital D" to indicate the statutory subsection allegedly violated. *Id.* at 30:23-31:21. Exhibit 4, which purports to be part of the docket from Case No. 01CR2195101, shows that judgment was entered sentencing Ingram to "18 months probation," but does not identify the statute under which he was charged or indicate whether the charge was a misdemeanor or a felony. Exhibit 5, which purports to be an "Order [for] Sentence Of Probation," bears a handwritten identification of the statute allegedly violated identifying the pertinent subsection with a

"capital D," and no indication of whether the charge was a misdemeanor or a felony, and no indication of what term of incarceration was possible, but with an indication that a term of probation of 18 months was imposed. Exhibit 6, which purports to be a Chicago Police Department Criminal History Report on Michael Ingram, identifies the statute that Ingram allegedly violated on June 7, 2001, as "720 ILCS 570.0/402-C," which is at odds with any identification of the statute in question in court records. Finally, Exhibit 7, which purports to be conviction information on Ingram in the records of the Drug Enforcement Administration (DEA) as of August 13, 2007, appears to indicate that Ingram was charged with violating "720 ILCS 570.0/402-C," but that the disposition of the charge was for a violation of "720 ILCS 570.0/401-D." These exhibits were admitted subject to Ingram's objections.

The court did not determine at the sentencing hearing on March 24, 2009, whether or not the prosecution had succeeded, on its second bite at the apple, to prove that Ingram had a prior felony drug conviction, such that he was subject to enhanced penalties pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851. Rather, on the record at the conclusion of the hearing on March 24, 2009, and subsequently by written Order, the court granted the parties leave to file post-hearing briefs on whether or not the prosecution's Exhibit 1 is a valid, duly authorized certified document, admissible under the Rules of Evidence as an exception to the hearsay rule or is otherwise admissible at sentencing, and whether the other exhibits meet any exception to the hearsay rule or are otherwise admissible at sentencing. At the March 24, 2009, hearing, the court indicated that it would bring the parties back for completion of Ingram's sentencing at a mutually convenient date after considering the parties' post-hearing briefs, and the Order setting the post-hearing briefing schedule also set the completion of Ingram's sentencing hearing for May 8, 2009. The prosecution filed a Sentencing Memorandum Regarding Issues Raised By The Court on

April 7, 2009, and Ingram filed a Response To Government's Brief On Admissibility Of Purported Prior Conviction Documents on April 13, 2009.

At the sentencing hearing on May 8, 2009, the court summarized the findings, set forth in more detail below, concerning whether or not the prosecution had now proved Ingram's alleged prior felony drug conviction. The court also heard final arguments on defendant Ingram's sentence and placement and the defendant was offered, but waived, the opportunity to allocute to the court. At the conclusion of that hearing, the court imposed sentence after consideration of Ingram's advisory Sentencing Guidelines range, mandatory minimum sentence, grounds for departure or variance, and the 18 U.S.C. § 3553(a) factors.

## II.  LEGAL ANALYSIS

### A.  The Prosecution's Second Bite At The Apple

As explained above, one of the reasons for this written ruling is to register respectful disagreement with the appellate court's remand to give the prosecution a "second bite at the apple" to try to prove defendant Ingram's alleged prior felony drug conviction. The appellate court's remand for such a second bite is troubling, because giving the prosecution a second bite at the apple, on grounds that the prosecution never raised in its appellate briefs, eviscerates several long-standing, bedrock principles of appellate review, including the doctrines of "plain error" and "party presentation"; creates out of thin air a "bailout" not requested by the prosecution; is unsupported by any precedent in this Circuit or anywhere else; is unsupported by any conceivable analogue in criminal law (or civil law, for that matter); is inconsistent with the plain language of 21 U.S.C. § 851, and thus contravenes the intent of Congress; and is inconsistent with the record and the facts in this case, ignored or overlooked in the *per curiam* opinion, concerning when the

prosecution not only should have known but actually knew that Ingram's prior conviction was in dispute. For each of these reasons, and in the context of a recent string of eleven reversals of the Eighth Circuit Court of Appeals by the United States Supreme Court on sentencing issues on which the Eighth Circuit Court of Appeals had erroneously tilted in favor of the prosecution, the appellate court's *sua sponte* review and remand in this case are deeply troubling.

### 1.  *Sua sponte raising the issues*

As noted above, the issue on the prosecution's appeal, as framed by the prosecution and acknowledged by the appellate court, was whether the prosecution had proved Ingram's prior felony drug conviction, not whether the prosecution had been surprised by Ingram's denial of the prior conviction or improperly denied a continuance to attempt to marshal evidence to prove such a prior conviction. Notwithstanding the *prosecution's* framing of the issue on appeal, the appellate court, *sua sponte*, raised the questions of whether Ingram's § 851 Response was tardy and whether the denial of the prosecution's request for a continuance was proper. The appellate court then not only decided the appeal on issues never raised by the prosecution in its appeal, but *sua sponte* fashioned relief never requested by the prosecution on appeal by remanding to give the prosecution a second bite at the apple to try to prove Ingram's prior felony drug conviction.

### 2.  *Lack of authority*

With all due respect to the appellate court, *sua sponte* review by and relief from an appellate court, as occurred in this case, conforms to no known authority or principle of appellate review. Rather, the Eighth Circuit Court of Appeals has consistently adhered to the principle that issues not raised on appeal are waived and that the appellate court's review is limited to issues raised by the appellant or properly raised by the appellee in a

17

cross-appeal. *See Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 845 n.4 (8th Cir. 2006) (limiting review to issues raised by the appellant and declining to consider the appellee's challenge to the district court's adverse ruling not raised in a cross-appeal, and noting the well-settled principle that failure to file a cross-appeal prohibits an appellee from attempting to enlarge his or her own rights or to lessen an adversary's rights); *ABC, Inc. v. Nameloc, Inc.*, 403 F.3d 607, 610 (8th Cir. 2005) (citing *Sweat v. City of Fort Smith, Ark.*, 265 F.3d 692, 696 (8th Cir. 2001), for the proposition that "claims not raised in an initial appeal are waived"); *Wright v. Norris*, 299 F.3d 926, 928 (8th Cir. 2002) (noting that, in *habeas* cases, "'[w]e limit our appellate review to the issues specified in the certificate of appealability,'" quoting *Harris v. Bowersox*, 184 F.3d 744, 748 (8th Cir.), *cert. denied*, 528 U.S. 1097 (2000), and, therefore, rejecting the petitioner's urgings to expand his certificate of appealability to include a further issue); *White v. Moulder*, 30 F.3d 80, 82 (8th Cir. 1994) (observing, "Our review is limited to issues specifically raised and argued in the [appellant's] brief," and so declining to consider issues that the appellant did not brief; *see also* FED. R. APP. P. 28(a)(5) (requiring that the appellant's brief contain "a statement of the issues presented for review); *id.* 29(c) (in the event of a cross-appeal, the appellant's principal brief and the appellee's principal brief must each comply with Rule 28(a)); *but see Singleton v. Cecil*, 155 F.3d 983, 990 (8th Cir. 1998) (Magill, C.J., dissenting) (chastising the panel majority for resolving the appeal on an issue that the appellant never raised), *and compare Singleton v. Cecil*, 176 F.3d 419 (8th Cir. 1999) (*en banc*) (majority decision by Magill, C.J.).

The Eighth Circuit Court of Appeals has applied this rule to criminal *defendants* in the past. In *United States v. Simmons*, 964 F.2d 763 (8th Cir. 1992), the appellate court held that, where the defendant failed to challenge the district court's drug quantity determination on appeal, the appellate court could review only the issues specifically raised

in the defendant's brief, because "[i]ssues not raised on appeal are waived under Rule 4 [sic] of the Federal Rules of Appellate Procedure, which requires the inclusion of a statement of the issues in the appellate brief." *Simmons*, 964 F.2d at 777 (citing *Gramegna v. Johnson*, 846 F.2d 675 (11th Cir. 1988), which explains that "[t]his policy derives from Fed.R.App. 28, which requires a statement of issues to be included in appellant's brief," but noting that the appellate rules may be suspended "where manifest injustice would result from the default"); *see also United States v. McKinney*, 79 F.3d 105, 109 (8th Cir. 1996) (the defendant waived his argument that his conviction for using firearms was infirm by failing to argue that issue in his initial appeal brief), *cert. granted and judgment vacated on other grounds*, 520 U.S. 1226 (1997). Thus, following this precedent, the Eighth Circuit Court of Appeals should have concluded that the prosecution waived the issues of the untimeliness of Ingram's § 851 Response and the denial of a continuance of the sentencing hearing based on that alleged untimeliness by failing to raise those issues in its initial appeal brief or, indeed, at any point prior to the appellate court *sua sponte* raising those issues at oral arguments.

Indeed, the Supreme Court recently rejected a similar *sua sponte* review and remedy by the Eighth Circuit Court of Appeals in *Greenlaw v. United States*, ___ U.S. ___, 128 S. Ct. 2559 (2008). In *Greenlaw*, the Court considered whether a United States Circuit Court of Appeals, acting on its own initiative, may order an increase in a defendant's sentence. *Greenlaw*, ___ U.S. at ___, 128 S. Ct. at 2262 (so framing the issue on petition for certiorari). In the case below,[4] the Eighth Circuit Court of Appeals had considered

---

[4] In *United States v. Carter*, 481 F.3d 601 (8th Cir. 2007), the case below, co-defendants Carter and Greenlaw were charged with various drug-trafficking and firearms offenses. Only defendant Greenlaw petitioned for certiorari to the United States Supreme

(continued...)

defendant Greenlaw's appeal of his sentence to 442 months of imprisonment, on the ground that the sentence was unreasonably long, but after rejecting all of defendant Greenlaw's arguments, and without "invitation" or cross-appeal from the prosecution, the Circuit Court of Appeals determined that the applicable law plainly required a prison sentence 15 years longer than the term that the trial court had imposed and so instructed the trial court on remand to increase defendant Greenlaw's sentence to 622 months. *Greenlaw*, ___U.S. at ___, 128 S. Ct. at 2262. The Supreme Court, however, held that, "absent a government appeal or cross-appeal, the sentence Greenlaw received should not have been increased," and vacated the judgment of the Circuit Court of Appeals. *Id.*

The Supreme Court's rationale is particularly instructive here. As the Supreme Court explained,

> In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a *pro se* litigant's rights. See *Castro v. United States,* 540 U.S. 375, 381-383, 124 S. Ct. 786, 157 L. Ed. 2d 778 (2003). But as a general rule, "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Id.*, at 386, 124 S. Ct. 786 (SCALIA, J., concurring in part and concurring in judgment). As cogently explained:

---

[4](…continued)
Court concerning the appellate court's remand to the district court to impose the statutory mandatory consecutive sentence of 25 years on one of the firearms charges, thus increasing his sentence from 442 months to 622.

> "[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties. Counsel almost always know a great deal more about their cases than we do, and this must be particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before us." *United States v. Samuels,* 808 F.2d 1298, 1301 (C.A.8 1987) (R. Arnold, J., concurring in denial of reh'g en banc).

*Greenlaw*, ___ U.S. at ___, 128 S. Ct. at 2264 (footnotes omitted). Interestingly, the Supreme Court "t[ook] no position on whether correction of an error prejudicial to a *nonappealing criminal defendant* might be justified as a measure to obviate the need for a collateral attack." *Id.* at ___ n.2, 128 S. Ct. at 2264 n.2 (emphasis added). The Court also noted that "Congress, in [18 U.S.C.] § 3742(b), has accorded to the top representatives of the United States in litigation the prerogative to seek or forgo appellate correction of sentencing errors, however plain they may be" and "[t]hat measure should garner the Judiciary's full respect." *Id.* at 2264. The Court also rejected the notion that Rule 52(b), which states, "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention," and, as such, codifies the "plain error" doctrine, was meant to override the requirement of a cross-appeal by the government to render relief on a perceived sentencing error unfavorable to the government. *Id.* at ___, 128 S. Ct. at 2266.

The renewed exercise of some supposed power of *sua sponte* review and relief by the Eighth Circuit Court of Appeals in Ingram's case, albeit in the context of an appeal by the *prosecution*, offends essentially the same principles cited by the Court in *Greenlaw*. The appellate court, once again, without "invitation" or appeal of the issues from the prosecution, determined that the defendant's challenge to his prior conviction was untimely

and that the denial of a continuance was improper. *Cf. id.* at ___, 128 S. Ct. at 2262. However, under the holding and the logic of *Greenlaw*, absent a government appeal, the appellate court should not have considered or determined those issues. *Id.* Indeed, the Eighth Circuit Court of Appeals once again violated the "principle of party presentation," that is, it disregarded the parties' framing of the issues for decision, and instead stepped out of its "role of neutral arbiter of matters the parties present" and into the role of advocate for the prosecution. *Id.* at 2264-66. Also, as in *Greenlaw*, the appellate court's departure from the "principle of party presentation" in this case was not to protect a *pro se* litigant's rights in a criminal case, but to give "'the richest, most powerful, and best represented litigant to appear before [the federal courts],'" the prosecution, a second bite at the apple that the prosecution did not request on its appeal. *See id.* at 2264 (quoting *Samuels*, 808 F.2d 1301 (R. Arnold, J., concurring in the denial of reh'g en banc)). Thus, the Eighth Circuit Court of Appeals is a recidivist as to *sua sponte* review of issues not raised by the prosecution on appeal.

As *Greenlaw* suggests, this is not a case in which "plain error" review would allow the appellate court to consider either the timeliness of Ingram's § 851 Response or the denial of the prosecution's motion for continuance. *Id.* at 2264-66 ("Congress, in [18 U.S.C.] § 3742(b), has accorded to the top representatives of the United States in litigation the prerogative to seek or forgo appellate correction of sentencing errors, however plain they may be" and Rule 52(b), which codifies the "plain error" doctrine, was not meant to override the requirement of a cross-appeal by the government to render relief on a perceived sentencing error unfavorable to the government). "Plain error" review may save a party from failure to raise an issue *in the district court* that the party wishes to assert on appeal, at least if doing so will prevent a miscarriage of justice. *See, e.g., United States v. Barrera*, 562 F.3d 899, 901 (8th Cir. 2009) (the appellant's failure to raise objections

to a PSIR in the district court meant that he "'has waived this issue and may not raise it before this [appellate] court unless he can demonstrate plain error resulting in a miscarriage of justice,'" quoting *United States v. Flores*, 959 F.2d 83, 88 (8th Cir. 1992)); *Cole v. International Union, United Auto., Aerospace & Agr. Implement Workers*, 533 F.3d 932, 936 (8th Cir. 2008) (the appellate court will generally only "notice" plain error "to prevent a miscarriage of justice"). However, in this case, the appellant (the prosecution) *did* raise before the district court the alleged untimeliness of Ingram's § 851 Response and Ingram's failure otherwise to raise his challenge to his prior conviction within the time limits for objections to the PSIR or a sentencing brief, and *did* raise before the district court the issue of whether a continuance of Ingram's sentencing hearing was warranted in light of Ingram's § 851 Response, but *did not* assert those issues on appeal. Thus, the appellate court turned "plain error" review on its head by resuscitating and reinjecting issues that were raised below, but which were waived on appeal by the appellant's failure to assert them.

In the absence of any authority for *sua sponte* appellate review of issues not raised by an appellant, the appellate court's review of the timing of Ingram's § 851 Response and the denial of a continuance in light of that § 851 Response appears to be the exercise of some heretofore unrecognized inherent and apparently wide-ranging power of appellate courts to second-guess any decision of a trial court, whether or not it is challenged by an appellant. *Greenlaw* squarely rejects the notion that the appellate court has any such inherent power.

The appellate court's exercise of any such inherent power in this case was flawed for several other reasons. First, in undertaking such a *sua sponte* review, the appellate court gave no indication of what standard of review it was applying. For example, did the appellate court's review involve any deference whatsoever to the district court's

determinations, or any "clear" or "manifest" error limitations, or was it simply a *de novo* review of any issue or finding that piqued the appellate court's interest?

Second, as the appellate court's decision also demonstrates, it was not based on any recognized standard for determining whether or not the defendant's § 851 Response was untimely—not a § 851 statutory standard, *see* 21 U.S.C. § 851 (establishing procedures to establish a prior conviction, including deadlines for objections and denials); a local rule standard, *see* N.D. IA. L.CR.R. 32.a.2. (requiring that any sentencing memorandum be filed at least five court days prior to the sentencing hearing); an administrative order standard, *see* Northern District of Iowa Administrative Order No. 1241, ¶ 5(a) (requiring counsel to communicate to the probation officer within fourteen days of receiving the PSIR "any objections counsel may have to any material facts, information, sentencing classifications, sentencing guideline ranges, and policy statements contained in or omitted from the PSIR") (superseded on October 31, 2008, by Public Administrate Order No. 08-AO-13-P, which contains a comparable requirement); Northern District of Iowa Administrative Order 05-AO-0002-P (motions and briefs on variances and departures "shall be filed at least seven days prior to the scheduled sentencing"); or some other "prejudice" or "good cause" standard, *cf. United States v. Jones*, 70 F.3d 1009, 1010 (8th Cir. 1995) (the district court had the discretion to consider a defendant's untimely objection to denial of a mitigating-role reduction if the defendant satisfied Rule 32(b)(6)(D), which states, "[F]or good cause shown, the court may allow a new objection to be raised at any time before imposing sentence," but the district court had not abused its discretion by declining to rule on the defendant's untimely objection, where the defendant did not state any reason for his failure to raise the objection in a timely manner); *Dall v. United States*, 957 F.2d 571, 572 (8th Cir. 1992) (the district court did not abuse its discretion by considering the government's response to the petitioner's § 2255 motion,

even though it was filed four days late, because the petitioner had not indicated how he was prejudiced by the government's untimely filing). Nor did the appellate court resolve any tension among these various standards, for example, by determining whether the standards and procedures in a local administrative order or rule could "trump" the standards or procedures stated in 21 U.S.C. § 851.

Third, the appellate court's decision was not based on any recognized standard for determining whether and when a continuance should be granted. *See, e.g., United States v. Allmon*, 500 F.3d 800, 803 (8th Cir. 2007) ("District courts have broad discretion when ruling on requests for continuances. *See United States v. Urben-Potratz,* 470 F.3d 740, 743 (8th Cir. 2006). Continuances generally are not favored and should be granted only for a compelling reason. *United States v. Vesey,* 330 F.3d 1070, 1072 (8th Cir. 2003). This court 'will reverse a district court's decision to deny a motion for continuance only if the court abused its discretion and the moving party was prejudiced by the denial.' *Urben-Potratz,* 470 F.3d at 743.").

Instead of addressing any of these standards, the appellate court created for the first time, and apparently out of whole cloth, a "special circumstances" and "surprise" standard for reversing and remanding to afford the prosecution a second opportunity to prove Ingram's alleged prior felony drug conviction. Moreover, the appellate court inaugurated such a groundbreaking standard of *sua sponte* review and an entirely new "special circumstances" and "surprise" standard for determining whether a party should get a second bite at the apple to meet its burden of proof in a *per curiam*, unpublished opinion. Not only did the appellate court create the standard for this remand, but in doing so, the appellate court articulated no clarification of the procedures for notice of, objection to, and determination of a prior conviction or the standards for proof of a prior conviction for

purposes of a § 851 enhancement. Thus, to put it baldly, the appellate court simply granted the prosecution a "do over."

The appellate court's *per curiam*, *sua sponte* review in this case is disconcertingly consistent with a series of eleven recent rulings giving the prosecution's sentencing positions more deference than they are lawfully entitled to, requiring corrective action from the United States Supreme Court. *See, e.g., Bain v. United States* ___ U.S. ___, 2009 WL 1174863 (May 4, 2009) (granting certiorari and vacating and remanding the decision of the Eighth Circuit Court of Appeals, 537 F.3d 876 (8th Cir. 2008), which presumed that the sentencing court realized, one month after *Rita*, *infra*, that the presumption of reasonableness of a Guidelines sentence is only an appellate presumption, when the sentencing judge stated, "The Sentencing Guidelines are presumed reasonable here in the Eighth Circuit Court of Appeals. They are not mandatory, but they are based on extensive study and refinement," for further consideration in light of *Nelson v. United States*, 555 U.S. ___, 129 S. Ct. 890 (2009), which held, post-*Rita*, that the district court may not presume that the advisory Guidelines range is reasonable, and that the sentencing court's recognition that the Guidelines are not mandatory is "beside the point," if comments of the sentencing judge show that he or she did apply a presumption of reasonableness to the defendant's Guidelines range); *Flores-Figueroa v. United States*, ___ U.S. ___, 2009 WL 1174852 (May 4, 2009) (reversing the decision of the Eighth Circuit Court of Appeals below and abrogating *United States v. Mendoza-Gonzalez*, 520 F.3d 912 (8th Cir. 2008), to hold that "aggravated identity theft" in violation of 18 U.S.C. § 1028A(a)(1) requires proof that the defendant knew that the "means of identification" that he or she unlawfully transferred, possessed, or used did, in fact, belong to another person); *Greenlaw*, ___ U.S. ___, 128 S. Ct. 2559 (reversing the determination by the Eighth Circuit Court of Appeals, without government invitation or cross-appeal, that the

applicable law plainly required a prison sentence 15 years longer than the term imposed by the trial court, by holding that, absent a government appeal or cross-appeal, the sentence that the defendant received should not have been increased by the appellate court); *Spears v. United States*, ___, U.S. ___, 129 S. Ct. 840 (2009) (summarily rejecting the ruling of the Eighth Circuit Court of Appeals that, if the district court rejected the Sentencing Guidelines' 100:1 ratio for crack to powder cocaine, based on a categorical policy disagreement, the district court lacked the authority to replace that ratio with its own 20:1 ratio, and holding that, after such a categorical policy rejection of the Guidelines' 100:1 ratio, the district court had the authority to replace that ratio with its own 20:1 ratio, because the district court's choice of a replacement ratio was based upon two well-reasoned decisions by other courts, which themselves reflected the Sentencing Commission's expert judgment that a 20:1 ratio was appropriate in a "mine-run case"); *Chambers v. United States*, ___ U.S. ___, 129 S. Ct. 687 (2009) (overruling Eighth Circuit precedent, including *United States v. Ingram*, 501 F.3d 963, 968 (8th Cir. 2007), concluding that all escapes, including failures to return or report to custody, are "violent felonies," by holding that crimes "characterized by a failure to present oneself for detention on a specified occasion" are not "violent felon[ies]" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii)); *Moore v. United States*, ___ U.S. ___, 129 S. Ct. 4 (2008) (*per curiam*) (on the case's second trip to the Supreme Court, the Court held that the Eighth Circuit Court of Appeals should have remanded the case to the district court for resentencing under *Kimbrough*, *infra*, instead of reaffirming denial of a below-Guidelines sentence based on disparate treatment of similar amounts of crack and powder cocaine, because contrary to the appellate court's characterization of the district court's decision on remand, the district court clearly did not believe that it was authorized to consider such a reduction, but declined to do so); *Begay v. United States*, ___ U.S. ___, 128 S. Ct. 1581

(2008) (overruling *United States v. McCall*, 439 F.3d 967 (8th Cir. 2006) (*en banc*), by holding that driving under the influence of alcohol is not a "violent felony" for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e));[5] *Gall v. United States*, 128 S. Ct. 586 (2007) (abrogating *United States v. Claiborne*, 439 F.3d 479 (8th Cir. 2006), which held that a sentence outside of the Guidelines range must be supported by a justification that is proportional to the extent of the difference between the advisory range and the sentence imposed, by holding that, in reviewing the reasonableness of a sentence outside the advisory Guidelines range, the appellate court may take the degree of the variance into account, but that there is no rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range); *Watson v. United States*, 128 S. Ct. 579 (2007) (abrogating the long-standing rule in the Eighth Circuit, from *United States v. Cannon*, 88 F.3d 1495 (8th Cir. 1996), and most recently applied in, *United States v. Pruett*, 501 F.3d 976 (8th Cir. 2007), *vacated and remanded*, ___ U.S. ___, 128 S. Ct. 1473 (2008), that a person who trades drugs for a gun has "used" a firearm "during and in relation to [a] drug trafficking crime" within the meaning of 18 U.S.C. § 924(c)(1)(A), by holding that such conduct does not violate the statute); *Kimbrough v. United States*, ___

---

[5]In light of *Chambers* and *Begay*, the Eighth Circuit Court of Appeals has also been required to reconsider its prior determinations that other state crimes are "violent felonies" within the meaning of the Armed Career Criminal Act or the career offender guideline. *See, e.g., United States v. Miller*, 305 Fed.Appx. 302 (8th Cir. 2008) (*per curiam*) (Minnesota crime of auto theft is not a "violent felony" within the meaning of the ACCA); *United States v. Thomas*, 300 F3d.Appx. 447 (2008) (Missouri crime of auto tampering is not a "violent felony" under the ACCA), *reh'g en banc denied* (Feb. 20, 2009); *United States v. Aleman*, 548 F.3d 1158, 1168 (8th Cir. 2008) (Minnesota crime of auto theft is not a "crime of violence" within the meaning of the career offender guideline, U.S.S.G. § 4B1.1); *United States v. Williams*, 537 F.3d 969, 974-75 (8th Cir.) (Missouri crime of auto tampering is not a "crime of violence" under the U.S.S.G. § 4B1.1), *reh'g denied*, 546 F.3d 961 (8th Cir.2008).

U.S. \_\_\_, 128 S. Ct. 558 (2007) (abrogating, *inter alia*, *United States v. Johnson*, 474 F.3d 515, 522 (8th Cir. 2007), which had held that a sentencing court may not impose a sentence outside of the Guidelines range based on its disagreement with the crack/powder disparity, by holding that a district court may conclude that the Guidelines' crack cocaine/powder cocaine disparity yields a sentence that is greater than necessary); *Rita v. United States*, 551 U.S. 338 (2007) (overturning the Eighth Circuit rule that a sentence within the guidelines range is presumptively reasonable, at both the sentencing court and appellate court levels, *see United States v. Garnica*, 477 F.3d 628, 631 (8th Cir. 2007) (*per curiam*), by holding that the appellate court may presume that a sentencing within the advisory guidelines is reasonable, but that the sentencing court may not accord the advisory range a presumption of reasonableness).[6] The odds of eleven decisions in a row

---

[6]Despite this series of Supreme Court decisions overturning Eighth Circuit precedent that had favored the prosecution, hundreds of defendants in our Circuit are still serving what likely totals thousands of unwarranted years of imprisonment, because none of these Supreme Court decisions is retroactive. For example, just based on this appellate court's erroneous decision concerning the application of the § 1028A "identity theft" statute, unanimously reversed by the Supreme Court in *Flores-Figueroa* earlier this month, 265 defendants in the Northern District of Iowa's now infamous Postville immigration raid were each sentenced pursuant to Rule 11(c)(1)(C) to 5 months of federal prison time, for a total of 1325 months—more than 110 years—of imprisonment. I am intimately familiar with this situation, because I sentenced 57 of these defendants. These 57 defendants combined did not have a single felony or misdemeanor conviction among them—not even a single simple misdemeanor conviction. Based on my 15 years of experience, I believe that, without the § 1028A "identity theft" charge—which the prosecution would not have been able to prove in light of the Supreme Court's decision in *Flores-Figueroa*—each of these defendants would have received a sentence on other charges of "time served"—a sentence of just a few days—and the U.S. Attorney's Office routinely has not resisted such sentences. Here, however, the U.S. Attorneys Office for the Northern District of Iowa was able to use this appellate court's erroneous interpretation of § 1028A as a hammer to

(continued...)

from one court being wrong—assuming that there was a 50/50 chance that they were right in the first place—is 1 in 2,048. Surely the odds of these eleven decisions—which were not in a row, but which all came down within a relatively short two- or three-year period—reversing or abrogating eleven rules in one Circuit Court of Appeals is, likewise, extraordinarily low. Interestingly, there is not a single United States Supreme Court decision in the same time frame reversing the Eighth Circuit Court of Appeals for its misapplication of federal sentencing law *in favor* of a criminal defendant. Indeed, in nearly fifteen years as a federal district court judge, this judge cannot recall a single case in which the Eighth Circuit Court of Appeals *sua sponte* granted a defendant in a criminal case an unrequested "mulligan."

Similarly, the appellate court ordinarily will not consider issues not properly raised—or not raised at all—on appeal by a criminal defendant, unless it is to *deny* the defendant relief. *See, e.g., United States v. McGee*, 201 F.3d 1022, 1023 (8th Cir. 2000) (the defendant filed a *pro se* motion to add a supplemental issue on appeal after oral arguments—that he was entitled to a new trial on a drug conspiracy charge because trial of that charge was prejudiced by its misjoinder with a vacated firearms charge—but the court rejected that contention as "untimely" and "also without merit"). Again, *Greenlaw* suggests that the courts' power to review unappealed issues should be exercised to avoid prejudice to criminal defendants, not to their disadvantage. *See Greenlaw*, ___ U.S. at ___

---

[6](…continued)
get each of these hard-working defendants, with zero criminal history points, to plead to a 5-month sentence. This is not a criticism of the U.S. Attorney's Office, but an observation of the effect of this appellate court's erroneous decision. This example is just the tip of the iceberg of the effect that the repeated erroneous decisions by this appellate court have had on the length of defendants' sentences. Who speaks for the defendants who are serving thousands of extra years of unjustified incarceration?

n.2, 128 S. Ct. at 2264 n.2 (taking "no position on whether correction of an error prejudicial to a *nonappealing criminal defendant* might be justified as a measure to obviate the need for a collateral attack" (emphasis added)).

The appellate court's actions here were plainly to the disadvantage of the criminal defendant and plainly to the advantage of the prosecution and, quite clearly, violated "the principle of party presentation." *Id.* at 2264.

### 3. *Unsupported conclusions*

Even supposing that the appellate court had the authority to undertake some sort of *sua sponte* review or "inverse plain error" review—by considering on appeal an issue raised by the prosecution below, but not raised by the prosecution on appeal—granting such *sua sponte* review and relief in this case would not comply with the stringent standard for relief from "plain error," which is premised on avoiding a "miscarriage of justice." *Cf. Black v. Shultz*, 530 F.3d 702, 708 (8th Cir. 2008) ("'Plain error is a stringently limited standard of review, especially in the civil context, and must result in a miscarriage of justice in order to compel reversal," quoting *Niemiec v. Union Pacific Railroad Co.*, 449 F.3d 854, 858 (8th Cir. 2006), with internal quotation marks and citations omitted); *accord Barrera*, 562 F.3d at 901 (criminal case noting that a party can raise on appeal an issue waived by failure to raise it in the lower court, if the party can demonstrate plain error resulting in a miscarriage of justice); *Cole*, 533 F.3d at 936 (relief for plain error is generally only available to prevent a miscarriage of justice). Perhaps because the appellate court injected the issues, without briefing by the parties, the appellate court failed to consider the complete record, which demonstrates that there was no "miscarriage of justice" here, no "special circumstances," and no demonstration of "unfair surprise" to the prosecution in the defendant's denial of his prior conviction. Thus, the purported "error" that the appellate court considered *sua sponte* did not seriously affect the fairness,

integrity, or public reputation of the judicial proceedings, or otherwise affect substantial rights. *See United States v. Pate*, 518 F.3d 972, 975 (8th Cir. 2008) ("We review for plain error an argument not raised at sentencing. *See United States v. Mink,* 476 F.3d 558, 563 (8th Cir. 2007). 'Under plain error review we will correct an error if it "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings."' *United States v. Flying By,* 511 F.3d 773, 778 (8th Cir. 2007) (quoting *United States v. Olano,* 507 U.S. 725, 732, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993)). 'Under plain-error review, the defendant has the burden to prove that there was (1) error, (2) that was plain, and (3) that affected substantial rights.' *United States v. Eagle,* 515 F.3d 794, 796 (8th Cir. 2008).").

More specifically, a review of the complete record shows that Ingram's § 851 Response was timely under § 851 itself, this court ruled that local rules could not trump the statutory deadlines, and the appellate court did not hold otherwise or even consider that question. Subsection (a) of the statute provides, in pertinent part, that no enhancement for a prior conviction is permitted "unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1); *but see United States v. Johnson*, 462 F.3d 815, 823 (8th Cir. 2006) (although the general procedure is for the prosecution to file a separate information pursuant to § 851, the statute only requires "notice" of intent to rely on a prior conviction, and that "notice" may come from the face of the indictment, if it lists the prior convictions on which the prosecution intends to rely and expressly cites § 851). The parties apparently do not dispute that the prosecution's § 851 Notice in this case was an "information" stating the defendant's prior conviction to be relied upon within the meaning of 21 U.S.C. § 851(a).

What is at issue here is the timeliness of the defendant's response to that "information," under subsections (b) and (c) of § 851. As to the timeliness issue, § 851(b) provides as follows:

### (b) Affirmation or denial of previous conviction

> If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

21 U.S.C. § 851(b). The plain language[7] of this subsection requires the *court* to make inquiry *before sentence is imposed* whether the defendant affirms or denies the prior

---

[7]This court has pointed out, on numerous occasions, that the first approach to statutory interpretation is the "plain language" of the statute in question. *See, e.g., B & D II,* 332 F. Supp. 2d at 1210; *Kinkaid v. John Morrell & Co.,* 321 F. Supp. 2d 1090, 1103 n. 3 (N.D. Iowa 2004) (citing such reiterations); *accord United States v. Cacioppo,* 460 F.3d 1012, 1016 (8th Cir. 2006). The Supreme Court describes this rule as the "one, cardinal canon before all others." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Id.* (citing *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241-42, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989); *United States v. Goldenberg,* 168 U.S. 95, 102-03, 18 S. Ct. 3, 42 L.Ed. 394 (1897); *Oneale v. Thornton,* 10 U.S. (6 Cranch) 53, 68, 3 L.Ed. 150 (1810)). When the language of the statute is plain, the inquiry also ends with the language of the statute, for in such instances "the sole function of the courts is to enforce [the statute] according to its terms." *Ron Pair,* 489 U.S. at 241, 109 S. Ct. 1026 (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S. Ct. 192, 61 L.Ed. 442 (1917)); *Cacioppo,* 460 F.3d at 1016 ("Where the language is plain, we need inquire no further.") (citing *Ron Pair,* 489 U.S. at 241, 109 S. Ct. 1026).

conviction. Thus, it would appear that a denial that is not made until sentencing, and not until inquiry by the court, would be timely, and that defendant Ingram's written § 851 Response, filed the last business day before his sentencing, without prior inquiry by the court, was actually *earlier* notice of his denial of the prior conviction than is required by the statute.

In any event, Ingram's written § 851 Response complied with subsection (c)(1), which provides, in pertinent part, as follows:

> **(c) Denial; written response; hearing**
>
> (1) If the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the United States attorney. The court shall hold a hearing to determine any issues raised by the response which would except the person from increased punishment. . . . The hearing shall be before the court without a jury and either party may introduce evidence. Except as otherwise provided in paragraph (2) of this subsection, the United States attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. At the request of either party, the court shall enter findings of fact and conclusions of law.

21 U.S.C. § 851(c)(1); *see United States v. Marks*, 38 F.3d 1009, 1014 (8th Cir. 1994) (§ 851(c)(1) "clearly states" that the defendant must file a written response to the information). Again, the plain language of this statute shows that the denial that is the trigger for a written response to the information is the denial pursuant to the preceding subsection, § 851(b), which, as was just explained, is not due until the court makes inquiry of the defendant before sentence is imposed. Thus, Ingram's written § 851 Response, filed before any inquiry by the court, was also, if anything, *earlier* than the statute required.

Similarly, it is the defendant's denial of the prior conviction, in response to the court's inquiry, that prompts the court to hold a hearing to determine any issues raised in the defendant's response, and at that hearing, the prosecution's burden is to prove the prior conviction beyond a reasonable doubt. *But see United States v. Gamboa*, 439 F.3d 796, 813-14 (8th Cir. 2006) (finding that any error in failing to comply strictly with § 851's procedures was harmless, where the parties' written and oral arguments concerning the proof of the prior conviction occurred before the court made a formal inquiry of the defendant at sentencing as to whether he admitted or denied the prior conviction).

The statute does not provide that any period of time must elapse between the defendant's initial denial and his filing of a written response to the § 851(a) information and the hearing at which the prosecution is put to its proof of the defendant's prior conviction. Rather, in the full context of the statutory scheme, these statutory provisions strongly suggest that the hearing is part of the sentencing hearing, before the court imposes sentence. Thus, proceeding directly to the hearing on the prosecution's proof of the defendant's prior conviction in this case, without a continuance to allow the prosecution to marshal its evidence in light of the defendant's denial, was not contrary to the statutory scheme. Had Congress, rather than the appellate court, wanted to provide the prosecution with more notice than § 851 requires, it clearly had the ability to do so.

The Eighth Circuit Court of Appeals has explained that compliance with the procedures in § 851 is subject to harmless error review when lack of strict compliance is raised *by the defendant*, and has explained that what the § 851 scheme requires is that the defendant "received written notice of the prior convictions, he was permitted to respond to them both in writing and by counsel, and he was given an opportunity to be heard by the decision maker before any decision was made." *United States v. Gamboa*, 439 F.3d 796, 813-14 (8th Cir. 2006). Because the provisions of § 851 are intended to protect *the*

*defendant's* rights, when enhancement of the defendant's sentence on the basis of prior convictions is at issue, *see, e.g., United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002) ("'Congress enacted § 851(a)(1) and the procedure for filing an information to protect defendants from receiving increased statutory sentences . . . resulting from prior, incorrectly charged offenses . . . and to give defendants the opportunity to show that they were not the persons convicted.'" (quoting *United States v. Wallace,* 895 F.2d 487, 489 (8th Cir. 1990)), it seems unlikely that the prosecution would be entitled to more procedural protection than the defendant. Thus, applying *Gamboa*'s minimum requirements for satisfying § 851 *to the prosecution*, the prosecution received written notice of Ingram's challenge to his prior conviction, the prosecution was permitted to respond to Ingram's denial, both in writing and by counsel, and the prosecution was given an opportunity to be heard by the decision maker before any decision was made. *Cf. Gamboa*, 439 F.3d 813-14 (finding that, where similar minimum requirements of the statute were met, any error in failure to comply strictly with § 851 procedures was harmless to the defendant). Therefore, the court reiterates its conclusion that defendant Ingram's notice of his denial of the prior conviction was timely, but the appellate court afforded the prosecution *more* protection than the statute provides to the defendant, whose rights it was designed to protect, by finding that the prosecution was "surprised" by the defendant's timely § 851 Response.

Also, as Ingram asserts, in *United States v. Brown*, 33 F.3d 1014 (8th Cir. 1994), the district court considered the defendant's objection to an enhanced sentence pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851, even though the defendant did not respond to the information until the sentencing hearing and only then argued that the prosecution had not provided evidence sufficient to prove that the prior conviction was a felony instead of a misdemeanor, and the Eighth Circuit Court of Appeals held that the issue was properly

preserved for appeal. *Brown*, 33 F.3d at 1017-18. The decision of the Eighth Circuit Court of Appeals on the prosecution's appeal in Ingram's case, finding that the prosecution was "surprised" by Ingram's written objection the last business day before sentencing and that the prosecution was, therefore, entitled to another opportunity to try to prove the prior felony conviction, is, thus, out of step with this circuit's own precedent on the timing of a § 851 objection.

Finally, assuming that some "inverse plain error" review is permissible, the prosecution cannot credibly claim—and, again, did not claim on appeal—that it was surprised to be put to its proof of the prior conviction at the June 16, 2008, sentencing hearing, so that the appellate court could not properly have found either prejudice to the prosecution or a "miscarriage of justice" in the denial of a continuance for the prosecution to attempt to marshal additional evidence to prove Ingram's prior conviction. *Cf. Black*, 530 F.3d at 708 ("Plain error is a stringently limited standard of review, especially in the civil context, and must result in a miscarriage of justice in order to compel reversal." (internal quotation marks and citation omitted); *accord Barrera*, 562 F.3d at 901 (criminal case noting that a party can raise on appeal an issue waived by failure to raise it in the lower court, if the party can demonstrate plain error resulting in a miscarriage of justice). As explained above, the prosecution's own § 851 Notice put the prosecution on notice, from at least February 4, 2008, that the prosecution might be required to prove Ingram's prior felony drug conviction to obtain enhanced penalties pursuant to 21 U.S.C. §§ 841(b)(1)(A) and § 851. Moreover, not later than March 4, 2008, when Ingram challenged the exhibits that the prosecution offered at trial to prove his prior conviction for Rule 404(b) purposes, and the prosecution withdrew that evidence, the prosecution was on notice that there were problems with its proof of Ingram's prior felony drug conviction and, more specifically still, the prosecution was on notice that Ingram challenged the

sufficiency of the prosecution's proof of whether such a prior conviction was a misdemeanor or a felony. These facts, ignored or overlooked by the appellate court in its *per curiam* opinion, undermine the appellate court's conclusion that the prosecution was somehow "surprised" or "disadvantaged" by the defendant's challenge to his prior conviction at sentencing, so that there were some "special circumstances" warranting a remand to give the prosecution another attempt to prove the prior conviction. *Contra Ingram*, 309 Fed.Appx. at 67-68 & n.1, 2009 WL 223103 at *2 & n.1 (finding that "special circumstances" were present, causing "surprise" and "disadvantage" to the prosecution concerning proof of the prior conviction). Indeed, it is hard to fathom how a defendant's § 851 response that complies with, indeed, exceeds, the notice requirements of the statute can possibly be a "special circumstance" triggering a judicial "bailout" of the prosecution's own failure of proof. The only "special circumstance" that this court sees was the inability of the prosecution to prove something that the prosecution knew that it had to prove. Thus, in the specific circumstances of this case, well before the June 16, 2008, sentencing hearing, the prosecution should have been prepared to prove Ingram's prior conviction. More generally, under the § 851 scheme, the prosecution is *always* on notice that it must stand ready to prove beyond a reasonable doubt at sentencing a defendant's prior conviction in order to obtain a sentencing enhancement pursuant to § 851, in anticipation of a defendant's possible denial of the prior conviction when the court makes an inquiry prior to imposing sentence. *See* 21 U.S.C. § 851(b) (providing that the court must make inquiry of the defendant before imposing sentence whether the defendant admits or denies the prior conviction) & (c)(1) (upon a defendant's denial of a prior conviction, the court must hold a hearing to determine whether the prior conviction enhancement is applicable at which the prosecution bears the burden of proof beyond a reasonable doubt).

In short, the prosecution should never have been given a second bite at the apple in this case to prove defendant Ingram's alleged prior conviction for purposes of enhancement of his sentence pursuant to 21 U.S.C. §§ 841(b)(1)(A) and § 851.

## B.  The Prosecution's Present Proof Of A Prior Conviction

Notwithstanding the foregoing, the mandate from the Eighth Circuit Court of Appeals directs this court to consider on remand "whether 720-570/401(D) of the Illinois Code means 720-570/401(d)" and "for other action as may be appropriate in light of any new evidence relating to an alleged prior felony drug conviction of Ingram in the Illinois courts." *United States v. Ingram*, 309 Fed. Appx. 66, 67-68, 2009 WL 223103, *2 (8th Cir. Feb. 2, 2009) (*per curiam*) (unpublished op.).  On the newly-minted record, the court finds that the first question on remand is no longer dispositive, but that disposition of Ingram's § 851 enhancement turns on new evidence presented by the prosecution at the March 24, 2009, sentencing hearing.

### 1.     *Preliminary evidentiary questions*

The first question, even before considering whether or not the prosecution has proved, on its second bite at the apple, that Ingram has a prior felony drug conviction, is what evidence the court can properly consider.   That question, in turn, requires consideration of certain evidentiary questions raised during the March 24, 2009, sentencing hearing and briefed by the parties post hearing:  (1) Whether or not the prosecution's Exhibit 1 is a valid, duly authorized certified document, admissible under the Rules of Evidence as an exception to the hearsay rule or is otherwise admissible at sentencing; and (2) whether the other exhibits meet any exception to the hearsay rule or are otherwise admissible at sentencing.

### a.    *Arguments of the parties*

As to all of the exhibits at issue in the March 24, 2009, sentencing hearing, the prosecution argues that the court admitted all of the same exhibits at Ingram's earlier June 16, 2008, sentencing hearing, after foundation was laid by a probation officer and a drug task force agent.  The prosecution also argues that, during the March 24, 2009, sentencing hearing, Mr. Casey, a deputy clerk of the Circuit Court of Cook County, Illinois, testified that he had examined Exhibits 1 through 6 [sic],[8] and the Cook County Clerk of Court's file (from which those exhibits were generated) and determined (after line-by-line examination) that they all were exact copies of the records in the Cook County Clerk of Court file in the case in question except that Exhibit 1 was certified and Exhibits 2 through 6 were not certified.

As to Exhibit 1, which purports to be a Certified Statement Of Conviction/ Disposition for Michael Ingram from the clerk of the Circuit Court of Cook County, Illinois, the prosecution argues that 705 ILCS 105/4 sets forth the bond and oath requirements for all clerks of court; that 705 ILCS 105/9 provides that the clerk may appoint deputies who must take the same oath as the clerk; and that 705  ILCS 105/10 provides that the principal clerk is responsible for the acts of his or her deputies.  The prosecution argues that Mr. Casey testified that the principal clerk of court for the Circuit Court of Cook County has appointed numerous deputies to perform acts on her behalf, including certification of official court records.  The prosecution then argues that Rule 902 of the Federal Rules of Evidence provides for the admissibility of certified copies of public records as "self-authenticating," and that Rule 44(a)(1) of the Federal Rules of Civil

---

[8]The prosecutor is simply wrong:  Exhibit 6 is not from court records, but from Chicago police records, and there is no indication that Exhibit 6 was drawn from exhibits in court records.  Only Exhibits 1 through 5 are from court records.

Procedure, made applicable to criminal proceedings by Rule 27 of the Federal Rules of Criminal Procedure, provides that a copy of an official record is admissible when "attested by the officer having the legal custody of the record, or by his deputy, and accompanied by a certificate that such officer has the custody." Thus, in this case, the prosecution argues that Mr. Casey's testimony, the Illinois statutes, and the applicable federal rules all demonstrate that its Exhibit 1 constitutes an admissible "certified" copy of an official court record, and that the court may rely upon that exhibit as a self-authenticating document for purposes of Ingram's sentencing hearing. In the alternative, the prosecution argues that Exhibit 1 is admissible for the same reasons that the other exhibits are also admissible.

As to all of the exhibits, the prosecution points out that, pursuant to Rule 1101(d)(3) of the Federal Rules of Evidence, the rules regarding hearsay are not applicable to sentencing proceedings, so that records and documents may be admissible without certification or self-authentication. Moreover, the prosecution cites *United States v. Stobaugh*, 420 F.3d 796, 803 (8th Cir. 2005), and cases cited therein, for the proposition that certified records are sufficient to prove prior convictions, but are not necessary. The prosecution argues that, in this case, the foundational testimony, as provided by a probation officer and a drug task force agent, and the duplicative and corroborative nature of the documents themselves provide sufficient indicia of accuracy for admission of all of the exhibits offered by the prosecution.

Ingram counters that, as to Exhibit 1, the requirements of Rule 902(4) of the Federal Rules of Evidence have *not* been met. He argues that, assuming without conceding that Illinois law allows deputy clerks to sign certifications on behalf of the actual clerk, there is no evidence that this document in fact complies with state law requirements, because Mr. Casey himself testified that he did not know who had affixed the signature of the clerk to the document reflected in Exhibit 1. Thus, he argues that there is no evidence

before this court that a deputy clerk, in fact, carried out the acts necessary to certify this document and, as such, no evidence that Illinois law has been followed.  He also contends that the certification fails to satisfy Rule 902(4), because it merely certifies that the information was derived from the computer records of the clerk's office, not that the content of those records is correct, true, and accurate.  He also argues that it is disingenuous for the prosecution to argue that the requirements of Rule 902(4) have been met, then to argue that the Rules of Evidence do not apply to a sentencing hearing, when § 851 imposes a requirement of proof beyond a reasonable doubt.  Thus, he asserts that there is no proper, authenticated, and accurate documentation before the court from which it could find, beyond a reasonable doubt, that a § 851 enhancement should apply in this case.

Ingram also argues that Rule 1101 of the Federal Rules of Evidence does not—or should not—apply in the context of a hearing on a § 851 enhancement, again because § 851 requires proof of a prior conviction beyond a reasonable doubt.  He argues that this standard of proof is in contrast to the "preponderance of the evidence" standard that otherwise applies in sentencing hearings.  Although he acknowledges that he has not been able to find any case law supporting his interpretation of § 851 on this point, he argues that the cases cited by the prosecution regarding proof of a prior conviction all relate to *guidelines* sentencing, not to a § 851 enhancement.

### b.    *Analysis*

It is true that Rule 1101(d)(3) provides that the Federal Rules of Evidence are inapplicable, *inter alia*, to sentencings, but Rule 1101(d)(3) does not thereby make the Rules of Evidence inapplicable to a *statutory* scheme for proof of a prior conviction imposing a "beyond a reasonable doubt" burden of proof, even if such proof is made in

the context of a sentencing hearing. It is also true that, in *United States v. Stobaugh*, 420 F.3d 796 (8th Cir. 2005), the Eighth Circuit Court of Appeals observed,

> To resolve a defendant's factual objections *related to the application of the guidelines*, the district court may consider "relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3; *see also United States v. Fleck,* 413 F.3d 883, 894 (8th Cir. 2005). While certified records are generally sufficient to prove prior convictions, *United States v. Simpson,* 94 F.3d 1373, 1381 (10th Cir. 1996), they are not necessary. *See United States v. Roach,* 164 F.3d 403, 414 (8th Cir. 1998) (holding that police department records and computer records from a clerk's office were sufficient to prove prior convictions where the defendant challenged only the veracity of the records, not that he was convicted of the crimes); *United States v. Herndon,* 78 F.3d 589 (8th Cir. Mar.8, 1996) (unpublished per curiam) (holding that a probation officer's testimony was sufficient to establish prior juvenile conviction for which the records were sealed).

*Stobaugh*, 420 F.3d at 803 (emphasis added). In *Stobaugh*, the court held that the district court had not erred in relying on numerous, sometimes duplicative, records concerning each of the defendant's prior convictions, because the records, although not certified, were from state agencies and authorities, and represented the most accurate records those agencies could provide at the time, and the records created no ambiguities as to the identity of each separate offense, the date of adjudication, and the punishment that resulted. *Id.* However, as Ingram points out, *Stobaugh* did not involve a determination of a prior conviction for purposes of a *statutory* enhancement, but application of the Sentencing Guidelines, and more specifically still, *Stobaugh* did not involve proceedings in which Congress has established a requirement that the prosecution must prove the prior

conviction beyond a reasonable doubt. *See* 21 U.S.C. § 851(c)(1). Thus, neither Rule 1101 nor *Stobaugh* authorizes the court to consider evidence that is not admissible under the Federal Rules of Evidence when determining whether the prosecution has proved a prior conviction beyond a reasonable doubt for purposes of a sentence enhancement pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851.

On the other hand, like Ingram, the court has found no decision of any federal court expressly holding that the Federal Rules of Evidence *are* applicable to proceedings under § 851. Even so, the court agrees with the logic of Ingram's argument that, when Congress mandates that the prosecution must prove something against a criminal defendant beyond a reasonable doubt, the implication, or the reasonable assumption, is that such proof requires compliance with the Federal Rules of Evidence. When Congress places the highest burden of proof in our legal system on the prosecution, with that burden should come the concomitant of the highest standard for admissibility of the pertinent evidence.

For example, in *Gerstein v. Pugh*, 420 U.S. 103 (1975), the Supreme Court distinguished between proof beyond a reasonable doubt, as required to prove guilt in a criminal case, and probable cause to detain a person pending further proceedings, explaining the burdens or proof and evidentiary requirements as follows:

> 'Guilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard. These rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property.
> * * *

> 'In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.' *Brinegar v. United States*, 338 U.S., at 174-175, 69 S. Ct. 1302, 1310, 93 L.Ed. 1879.
>
> Cf. *McCray v. Illinois*, 386 U.S. 300, 87 S. Ct. 1056, 18 L. Ed. 2d 62 (1967).

*Gerstein*, 420 U.S. at 120-21. Similarly, it is appropriate to require that, when the prosecution must prove something other than guilt on a charged offense, such as a prior felony drug conviction, beyond a reasonable doubt, as is the case in proceedings pursuant to § 851, it follows that the evidence must also be "'confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard.'" *Id.* (quoting *Brinegar*, 338 U.S. at 174). Therefore, because Congress has not directed the court to deal with mere "probabilities" as to proof of a contested prior conviction pursuant to § 851, but to deal with proof beyond a reasonable doubt, this court will apply the Federal Rules of Evidence in § 851 proceedings, as well.

Applying the Federal Rules of Evidence, the court finds that Exhibits 1 through 5 are properly authenticated, for purposes of § 851 proceedings, pursuant to Rule 901 of the Federal Rules of Evidence, whether or not they are "self-authenticating" documents within the meaning of Rule 902(4). Rule 901 provides, in pertinent part, as follows:

> **(a) General provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

**(b) Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

**(1) Testimony of witness with knowledge.** Testimony that a matter is what it is claimed to be.

FED. R. EVID. 901; *see also United States v. Two Elk*, 536 F.3d 890, 905 (8th Cir. 2008) ("Rule 901 mandates only that the authentication requirement 'as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.' Fed.R.Evid. 901(a). The Rule then notes that the '[t]estimony of [a] witness with knowledge' suffices. Fed.R.Evid. 901(b)(1)."). Thus, where a witness authenticates a document as accurate, and the record establishes the witness's qualification to authenticate the document, the district court does not abuse its discretion in finding that the authentication is reliable and the document is authentic. *See Two Elks*, 536 F.3d at 905 (the requirements for admissibility under Rule 901 were met, where two experts authenticated certain photographs as accurate depictions of the normal genitalia of young females, and those experts were qualified as experts, so that their authentications were reliable). Here, as the prosecution argues, the record at the March 24, 2009, sentencing hearing established that Mr. Casey was qualified to determine whether the court records of the Circuit Court of Cook County, Illinois, offered by the prosecution as Exhibits 1 through 5, were correct, after a comparison of those exhibits to court records of which he was a custodian, and he then authenticated those exhibits as what they purported to be. *See* March 24, 2009, Realtime Sentencing Transcript at 9:3-14:8 (establishing Mr. Casey's qualifications as a deputy clerk of court for the Circuit Court of Cook County, Illinois), 14:18-15:6 (establishing that Mr. Casey had compared Exhibits 1 through 5 to court records and determined that they were the "actual documents from

[Michael Ingram's] file"). Thus, the requirements of Rule 901(b)(1) were met. *Two Elks*, 536 F.2d at 905 (Rule 901(b)(1) is satisfied if the witness authenticating the records is qualified to make such an authentication, demonstrating that the records are reliable). Therefore, Exhibits 1 through 5 are properly authenticated, for purposes of § 851 proceedings, pursuant to Rule 901 of the Federal Rules of Evidence.

Exhibits 1 through 5 are also admissible over defendant Ingram's hearsay objections. Rule 803(8) excludes such "public records" from the hearsay rule, even though the declarant is available as a witness, "unless the sources of information or other circumstances indicate lack of trustworthiness," and Rule 803(22) provides that evidence of a final judgment of guilty on a felony offense is excluded from the hearsay rule and admissible "to prove any fact essential to sustain the judgment." *See, e.g., United States v. Weiland*, 420 F.3d 1062, 1074 (9th Cir. 2005) (the Ninth Circuit rule is that public records, including records of conviction, must be admitted, if at all, under Rule 803(8) or, in some cases, Rule 803(22), and such admission is appropriate if the records are properly authenticated, for example, pursuant to Rule 902); *and compare Olsen v. Correiro*, 189 F.3d 52, 63-64 (1st Cir. 1999) (although the court concluded that Rule 803(22) did not apply when records of a prior conviction were offered to prove the fact of a prior conviction itself, rather than to prove underlying facts to sustain that conviction, Rule 803(8) did apply to such conviction records when used to prove a prior conviction, so that prior conviction records that were reliable and trustworthy were admissible pursuant to Rule 803(8)). Here, Mr. Casey's testimony not only authenticates these records, but also establishes their trustworthiness as court records, so that they are admissible pursuant to Rule 803(8). *See Olsen*, 189 F.2d at 63-64. Defendant Ingram does not challenge the admissibility of these exhibits on any ground other than authenticity and hearsay, but even so, the court expressly finds that they are relevant to and admissible on the question of

whether defendant Ingram has previously been convicted of a felony drug offense. *See* FED. R. EVID. 401 (defining relevant evidence); FED. R. EVID. 402 (relevant evidence is generally admissible).

The court finds it unnecessary to consider the remaining documents to determine the question presented in the § 851 proceedings, so the court will not address the admissibility of the remaining exhibits under the Federal Rules of Evidence.[9]

### 2.    *Proof of the prior conviction*

With evidentiary questions resolved, the court turns to the question of whether the exhibits found to be admissible in the § 851 proceedings and the testimony of Mr. Casey suffice to prove that defendant Ingram was previously convicted of a felony drug offense. Defendant Ingram's § 851 Response reads as a general denial that he has been previously convicted as alleged in the prosecution's § 851 Notice, although the court believes that his primary argument is that the prosecution has not proved that the offense identified in the § 851 Notice was a felony conviction.

As now properly authenticated, Exhibit 1 proves beyond a reasonable doubt that defendant Ingram was previously convicted of "[m]anufacture/delivery of [a] controlled substance, in Circuit Court of Cook County, Illinois, on or about October 24, 2001, in case number 01CR2195101." Defendant Ingram has raised no challenge to his identity as the same Michael Ingram convicted of that offense. Thus, the question now before the

---

[9]Those remaining exhibits are Exhibit 6, which purports to be a Chicago Police Department Criminal History Report on Michael Ingram, and Exhibit 7, which purports to be conviction information on Ingram in the records of the Drug Enforcement Administration (DEA) as of August 13, 2007. Mr. Casey's testimony would not have authenticated either of these exhibits.

court, as in the June 16, 2008, sentencing proceedings, is whether this conviction was a felony conviction.

As to that question, Exhibit 1, the other court records, and Mr. Casey's testimony are *not* sufficient to prove that "720-570/401(D)" in the court records, a statutory provision that does not exist in the Illinois Code, means "720-570/401(d)" of the Illinois Code, a provision that does exist and does define a felony offense. Although Mr. Casey's testimony establishes that the software in use by the clerk of court to create the records in question "defaults" to all capital letters, it is not sufficient to prove beyond a reasonable doubt that the statutory provision identified with a "capital D" is the same as the provision identified with a "small d." This is so, because Mr. Casey equivocated when the court asked him how one would be able to tell the difference between statutes with both capital and small letters, when he answered, not altogether responsively, "Everything is coded as capital." March 24, 2009, Realtime Sentencing Transcript, at 30:15-22. The ambiguity of the statutory citation remains, as well, because Exhibit 5, which purports to be an "Order [for] Sentence Of Probation," bears a handwritten identification of the statute allegedly violated identifying the pertinent subsection with a "capital D," for which no "software" excuse or explanation was offered.

Although the Eighth Circuit Court of Appeals cited *People v. Moore,* 365 Ill. App. 3d 53, 301 Ill. Dec. 819, 847 N.E.2d 829, 841 (Ill. App. 2006), as apparently relevant to this question, this court does not find that case dispositive of whether "capital D" equals "small d" in identification of Illinois statutes in Illinois court records. In the pertinent part of the *Moore* decision, the Illinois Court of Appeals noted the following:

> According to the criminal history report from the Chicago police department, attached to the PSI, one of the defendant's February 11, 1999, convictions was for a violation of section "720-570/401(D)" (720 ILCS 570/401(d) (West

2002)). Subsection (d) provides that a violation of the provisions of that section is a Class 2 felony. 720 ILCS 570/401(d) (West 2002). According to the report, the defendant's May 13, 1999, convictions included another violation of "720-570/401(D)" and a violation of "720 ILCS 570/407(B)(2)" (720 ILCS 570/407(b)(2) (West 2002)), a Class 1 felony. While the report did not specify the class of each of the defendant's convictions, the class is set forth in the statutory sections referenced in the report.

*Moore*, 847 N.E.2d at 841. The court then noted that "the defendant failed to object to the prosecutor's statement that he had two Class 2 or greater felony convictions and did not object to the imposition of a Class X sentence at sentencing or in a postsentencing motion," so that the defendant had waived his contention that his Class X sentence was improper. *Id*. at 841-42. The fact that an Illinois court was willing to assume that a statute identified with a "capital D" in records of the Chicago police department was actually identification of a statute with a "small d" is meaningless for purposes of determining whether the prosecution in a federal case has proved a prior conviction beyond a reasonable doubt, particularly where the defendant in the case before the Illinois court did not object to the prosecutor's statement that he had a prior felony conviction in the case in which the statute may have been misidentified. *Id*. Here, Ingram *does* deny that the records in question establish a prior *felony* conviction, thus squarely raising the questions of whether the statute identified exists and whether the statute identified defines a felony offense.

On the other hand, the prosecution's evidence at the March 24, 2009, sentencing hearing does establish beyond a reasonable doubt that Ingram's conviction on October 24, 2009, was for a *felony* offense. Mr. Casey testified that, on page one of Exhibit 1 (stapled as the second page of the exhibit), the capital "F" between the identification of the statute

in the charge and the description of the charge as "OTHER AMT NARCOTIC SCHED I&II" "indicates that the case type is a felony." *Id.* at 15:25-18:2. He also testified that the "CR" in the case number, 01CR2195101, "indicates that the Cook County state's attorney's office filed a felony case with us." *Id.* at 18:25-19:1. Mr. Casey also testified that the records indicated that Ingram had pleaded guilty to the charged offense and that there was nothing in the entry to indicate that the case was pleaded from felony status to misdemeanor status. *Id.* at 22:13-17. This testimony stands unrebutted. Finally, Mr. Casey testified that, in his opinion, Exhibit 1, together with Exhibit 5, which is an uncertified copy of a sentencing order, documented a felony conviction for defendant Ingram. *Id.* at 23:22-24:3. The court is compelled to agree with Mr. Casey. Nor can the court find that the ambiguity of the statutory provision cited in the court records or any other evidence in the record otherwise establishes an ambiguity as to whether or not the offense in question was a felony. Section 851 requires proof beyond a reasonable doubt that the prior conviction is for a felony drug offense; it does not require proof beyond a reasonable doubt that the conviction is pursuant to any particular statutory provision.

Therefore—although the court disputes whether it should ever have been required to reconsider the matter on remand from the Eighth Circuit Court of Appeals—the court now concludes that the prosecution has proved, beyond a reasonable doubt, that defendant Ingram was previously convicted of "[m]anufacture/delivery of [a] controlled substance, in Circuit Court of Cook County, Illinois, on or about October 24, 2001, in case number 01CR2195101," and that such prior conviction was for a felony drug offense within the meaning of 21 U.S.C. §§ 841(b)(1)(A) and 851. Thus, the court concludes that defendant Ingram is subject to a prior felony drug conviction enhancement of his sentence pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851, that the mandatory minimum sentence of incarceration of 240 months for a defendant with a prior conviction exceeds the advisory

sentencing guideline range of 168 to 210 months, and that Ingram must be sentenced to the mandatory minimum sentence.

### III. CONCLUSION

For the reasons stated above, the court maintains that the prosecution should never have been granted a second opportunity to attempt to prove that defendant Ingram has a prior felony drug conviction within the meaning of 21 U.S.C. §§ 841(b)(1)(A) and 851. Defendant Ingram's challenge to that prior conviction was timely under § 851, the prosecution was not surprised by his challenge, and the appellate court improperly injected into an appeal only of the merits of this court's determination that the prosecution had failed to prove the prior conviction the question of the timeliness of Ingram's objection and whether the prosecution should have been given a continuance to marshal evidence to respond to that objection. That said, upon remand for a "do over," the court finds that the prosecution has now proved that Ingram was previously convicted of a felony drug offense within the meaning of 21 U.S.C. §§ 841(b)(1)(A) and 851.

THEREFORE,

1.     The court finds that the prosecution has now proved that Ingram was previously convicted of a felony drug offense within the meaning of 21 U.S.C. §§ 841(b)(1)(A) and 851, and that defendant Ingram is, consequently subject to enhanced penalties pursuant to those statutory provisions, resulting in a mandatory minimum sentence of 240 months of incarceration.

2.     In the alternative, if the matter was improperly remanded to this court, the court reaffirms its prior conclusion that the prosecution has failed to prove that Ingram has a prior felony conviction, and would sentence him—after consideration of his advisory Sentencing Guidelines range, mandatory minimum sentence, grounds for departure or

variance, and the 18 U.S.C. § 3553(a) factors—to a sentence that does *not* include a prior conviction enhancement pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851 and, instead, falls within his advisory sentencing guideline range.

**IT IS SO ORDERED.**

**DATED** this 11th day of May, 2009.

*Mark W. Bennett*
_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA